stating that we had not properly pleaded a pattern of racketeering activity in a RICO case. A number of predicate acts, what's involved is the court's position that while there were many predicate acts, they were not sufficiently related. There were two things that need to be shown in order to properly plead a RICO pattern of racketeering. Number one, that there is a relatedness. And we're familiar with the test. Can you tell us what you think the test was that the district court was employing for relatedness? How did the district court approach relatedness? Well, of course, I don't know because I think that the court missed the fact that these are clearly related. I think what's important under the continuity aspects of it, there's a relatedness and continuity. And this court stated in Swiss talk. Hold on just a second, because I thought I didn't think continuity was even an issue. And maybe I'm mistaken about that. No, I'm sorry. I didn't mean to interrupt you. Is the other side arguing about continuity in this appeal? They are not. Okay. Well, then let's not talk about it. Let's talk about relatedness, because that's what is at issue in this appeal, right? All right. But the relatedness involves this. And there's a key paragraph in the complaint, which is paragraph 65, because it relates everything. And that paragraph reads, at a meeting, the defendant stated who is the son of the plaintiff, Anna Russo. I have a proposition for you. What if I made all charges disappear like they never happened? Would you like that? See, I'm the guy that can make everything disappear with the push of a pen. And I will do this for you if you let me keep everything we confiscated. Why don't you jump on board so I can welcome you to the family? This is what we do. And what our position is, when you look at these various predicate acts that we've related, four separate schemes, that this is what they do. And what he says is we fabricate false charges, we plant evidence on people, we prosecute them, and we confiscate their stuff. We take their goods. In this case, Anna Russo's alleged in her complaint they took hundreds of thousands of dollars' worth of stuff, which has never been accounted for. We don't know what happened to it, and we suggest that Mr. Lemicuso kept it for himself. Mr. Lindsey, I want to ask you about some of the specific acts. I want to start with the one involving the young woman. I'm going to refer to her by her initials, TF, because I'm not sure that she was a minor when this began. When it began, but yeah. Okay, so TF, you know who I'm talking about, the young woman. It seems from your pleadings that the purpose of those misdeeds were to elicit sexual favors. Mr. Lemicuso sought to get sexual favors from TF. Is that correct, or was there any other purpose of that particular predicate act? That's correct. That's what we're alleging, that he was extorting sexual favors with an agreement that he would permit her to get her child back. He was in control of her child with Children and Youth Services. She was a witness. And so what they did is that they took her child in order to force her to be a witness when she was 16 years old. Okay. How is that particular act, and with that purpose of obtaining sexual favors, related to the other predicate acts in the complaint? This court, I believe, at SWISTAC, stated that the issue is what did they, the conduct. It's interesting. In their briefs, the defendants say even by the appellant's own admission, the underlying extortion was different in each case, either property, money, or sexual favors. The issue is extortion. That's the way that this particular office conducted itself. It's alleged with regard to the Russo matter that the defendant, Mr. Lemon Cusco, was extorting all this property for himself. He was, in other words, he's using his position. So I think I understand. I understand that you're alleging extortion. And I understand that extortion is a racketeering activity. But I guess I'm trying to get to how that particular act of extortion for sexual favors of this young woman, T.F., is related to the other three predicate acts involving Luptak and Russo, Whiting, and Argo. It's simply related because this particular defendant, who was the common thread through all of these predicate acts, one of the issues was is that what's the common thread? The perpetrator. That's one of the things that run through this is the perpetrator was Mr. Lemon Cusco, and what he did was use his position to obtain something for himself, which is sexual favors. So if a single perpetrator who conducts several different acts of racketeering activity, if those are all related because of the same perpetrator, then it seems that RICO is extremely broad and could be raised in many circumstances where a single bad actor does many different bad things. Is that what your legal argument is, that having the same perpetrator do several acts of racketeering is enough for the acts to be related? All right. Your question is where you have the same perpetrator doing similar acts. Well, similar acts. Different acts. Yeah, different acts, but all of which qualify as racketeering activity. Is that enough to say that those acts are all related? I think based on the case law of the Third Circuit, Swiss and banks, yes, it is. The question is, is the similarity. See, it doesn't neatly fit into a box that this predicate act had these particular elements, this predicate act had these, but they all overlap. For example, one of the things that occurred with the Rousseau matter is they plant evidence, they fabricate evidence. In Argyros matter, that's what we're alleging the defendant Rio did. So you're kind of, this is what I understand. You referenced the banks case. This is what I understand the standard to be for relatedness. And this is from banks quoting the Supreme Court. Do they have the same or similar? So it doesn't always have to be the same, it just has to be similar. And then we get a lot of stuff. Purposes, results, participants, victims, methods of commission, or are otherwise interrelated by distinguishing characteristics. And so, you know, we don't have a lot of guidance. That's what we have. And so the question is, well, what if you don't have? I think what Judge Friedman was asking was there's a different purpose from kind of keeping some cars that you don't own than from eliciting a sexual favor. Those just have a different end game. But I guess we've got a longer list of ways that things can be related. We don't know if they're factors, if you have to satisfy all of them. We don't know what happened. But you also have results. So that would probably be a different result. You have participants. It doesn't seem to be the same participant or even a similar participant. Victims, it doesn't seem to be the same or similar. Maybe you're hanging your hat on this last one, methods of commission. Absolutely. And if you're hanging your hat on that, though, then I thought Judge Friedman's question is kind of a good one, which is, this is how I heard it. Throw the related test out. It does no work. A DA who's alleged to do bad things, everything they do in their office that's bad would be related. And so the relatedness test does no work because the method of commission would always be abuse of authority. And so if we've got nothing other than method of commission, and method of commission gives a positive result for everything the DA does, maybe that, as they say, proves too much. All I can tell you, sir, is this. The Swistak case, it's very, very broad what we can do at this stage. And this is what you've got to understand. We're making these allegations of this conduct of this district attorney and the things he did. And we're saying we want the case to continue. And what Swistak said, the language is, it may be that many of these issues will be then susceptible to resolution by a summary judgment. And the idea is we should be able to flesh it out with discovery. One of the things that was stated in the brief of the defendants is that we are admittedly on a fishing expedition. No. We want to engage in discovery. To show what, for example, one of the things that is this particular scheme or methodology is to obtain things, obtain stuff, for example. And one of the things I think it's important to point out that was never addressed by the defendant, the predicate acts, there are discrete predicate acts within these various broad areas. Right. Well, that's true. And we're trying to figure out whether you meet the relatedness prong here. And in that context, it would be helpful, Mr. Lindsay, if in the couple minutes you've got left, you would address the policy argument that the defendants make, which it was alluded to a bit, I think, maybe in Judge Phipps' question. I'm sorry, I couldn't hear, sir. It was alluded to perhaps a bit in Judge Phipps' question, and that is, if this case is permitted to go forward, then every prosecutor faces the prospect of upset defendants coming and saying, they offered me a plea deal, they tried to force me to do something, and look, they also forfeit property. It's a RICO enterprise. They offer plea deals. If I don't take them, they prosecute me, they send me to jail, and they also forfeit property. Now, what's wrong with that assertion by the defendants that we should be especially leery of an argument that tries to turn standard prosecutorial practice across all the United States, that it's offering plea deals and then prosecuting people with harsher penalties if they don't accept the deals? You know, you turn every prosecutor into a RICO gangster. These are not plea deals. One of the things that that was where we got off on the, by originally, the judge in this case, Judge Colville, stated, I believe in his opinion, that they were given the opportunity, and here's what he suggested. When you said this wasn't plea deals, I thought Mr. Lamech ended up, you know, that he was offered a plea deal, and that Mr. Aguirre was offered a plea deal and threatened if he didn't, and that Mr. Whiting was also threatened, and that Ms., I mean, I thought that was your point, was that they used the power, they leveraged the power of the office to bring criminal charges and to incent people to do stuff they otherwise wouldn't by the hammer of criminal sanction and offering plea deals if they'll take it and if they won't threaten them with worse. Did I misunderstand you? Yes. Okay. The suggestion was made by Judge Colville, in his opinion, that the issue was pleading guilty to lesser charges. There were no charges, if we start with like LUPAC with regard to Rousseau, the allegation is not like we will give you an opportunity to plead guilty to a lesser charge. With a stroke of my pen, I just simply wipe it out as if it never happened, as long as I get for myself all of the stuff that we would forfeit. This is not a legitimate forfeiture project. There's no legitimacy to what they were doing. So your answer to their policy argument is this is not the way prosecutors' office typically operates. Am I hearing that right? Absolutely. Okay. What we've said is this is not plea bargaining to say we won't charge you as long as you let us keep all the stuff which we wrongly forfeited or seized. Gotcha. Okay. We'll have you back on the rebuttal boards. Good morning. My name is Maria Pipic. I'm representing appellee Josh Lamacusa. I will be using 10 minutes, and Attorney Weimar will be using the last five minutes for Defendant Ryle. Essentially, what we have... Go ahead. Sure. Essentially, Mr. Lindsay is asking the court to apply a different pleading standard than what was applied by the district court and what has been applied by the Third Circuit. He cites the case law, including the H.J. case and the Swistok case, which was decided before Iqbal Twombly, and also the broad case... After Iqbal Twombly came a lot of other cases, including one that I was very surprised that neither side cited, which is the Berggren case, a Berggren case involving a former prosecutor who used his defense office to commit a number of significant RICO violations. And we said this in that case. We have noted that RICO's pattern requirement ensures that separately performed, functionally diverse, and directly unrelated predicate acts and offenses will form a pattern under RICO as long as they all have been undertaken in furtherance of one or another varied purposes of a common organized crime enterprise. That's our language from Berggren. We're quoting our Eufusio case. That's really, really broad. Twombly and Iqbal doesn't save you there. It said, as long as it is undertaken in furtherance of one or another varied purposes of a common organized crime enterprise, even if they're functionally diverse and unrelated, it can be a pattern. What's your answer to that, Ms. Pipak? Sure. The functionally related... When we have multiple transactions, we need to look at the underlying basis of the criminal activity and the predicate acts. And here, the alleged criminal activity and the predicate acts are different, that we don't have relatedness. Well, yeah. Help me with that because I've just told you what the standard is that we've set in Berggren based on H.J., which is still the standard by which we interpret RICO. And it says it's awfully, awfully broad, awfully broad. Now, they've argued and said this is an out-of-control corrupt office. They exercise the criminal authority to extort property and sexual favors to do so for their own benefit and for their friends. Mr. Lamicuzzo is the common thread through everything, but he uses this special investigative unit. And here are a whole bunch of things we allege happen, all of which at the 12v6 stage we have to take as true, right? This could all be complete lies, and Mr. Lindsey could get in trouble, and so could all these other folks. But at this stage, we're obligated to take those things as true, correct? Correct, with the understanding that there is judicial notice that can be taken, and there were legitimate plea bargains entered into, guilty pleas taken, that were not appealed. They still stand. You're saying these were legitimate. Right. That's assuming a conclusion which they're directly refuting. Their assertion is these were not legitimate. These were extortionate. So I'm not sure how you get out of 12v6 by saying they happened and you can take judicial notice of them, therefore they're legitimate. The direct allegation is they're all illegitimate. They're extortionate. And whether the extortion is to get money or it's to get sex or it's to forfeit property for your friends, they're all extortionate. That's the assertion. In light of that, and the language I've just quoted to you from Bertrand, how does the district court's assertion that these just, you know, not everybody's the same in every scheme, so not related, how does that square up? Sure. To get back to your point about the legitimacy of it, sure. It's a question. To get back to your question, Heck v. Humphrey would preclude this court and I think the district court from finding that those prosecutions were illegitimate at this point. We have a guilty plea on record that's not been appealed. Any precedent saying that Heck applies to Civil Rico cases? Not off the top of my head. Yeah, because we don't. It's a 1983 issue, right? Right. Okay. This is a Civil Rico case and the assertion is these things are extortionate. Sure. Go ahead and answer the question. We have to look at the, can you repeat, I got off track with Heck v. Humphrey. Well, let me try it this way. Sure. H.J. itself says, let me see if I can give you some language here. It says, and Judge Phipps just quoted some of this earlier, it takes us to the statute of the Special Offender Sentencing Act. And it says, conduct forms a pattern if, and then in the disjunctive, it lists a whole series of things. If they have the same or similar what? Results, participants, victims, methods of commission, or otherwise are interrelated by distinguishing characteristics. In other words, it doesn't appear to say, and in fact in Bergeron we made a point of saying it's disjunctive. It doesn't have to have the same thing all the way through. It can be related if they're same or similar, any combination of these things. How does the district court's analysis stand up when the district court said, quote, the schemes do not involve the same participants? We didn't say they had to all form the same participants. On the contrary, we said they can have different participants. I'm trying to get you to square the district court's analysis with the breadth of the relatedness inquiry as expressed by the Supreme Court in this court. Sure. The district court's opinion is very thorough. I think it goes beyond just saying we have different participants here. We have different methods. We have different plans. We have different purposes. And we have different manners that this alleged scheme was. I mean, the problem with the district court's opinion is I think it does kind of try to go through this disjunctive list pretty thoroughly. But every time it goes through it, the expression that's the governing expression as I read it says the same or similar. And every time the district court goes through it, it says, oh, these aren't the same. It's not the same participants. It's not the same victim. Okay. That gets you something. But to be complete, the district court has to then say that they aren't similar victims, similar methods, because the standard isn't just the same. Otherwise, RICO would be very weird if you were just targeting the same victim all the time. If you just created an enterprise with multiple predicate acts just to target one person or one entity, that's not what RICO does. RICO is about similar victims and similar people, similar methods. And so the shortcoming, at least for you, is you're defending a district court opinion that was very, very thorough underneath the standard of same, same, same, not same or similar. So how do you get out of that? How do you say, okay, I see nothing in the district court opinion that connects similarity of victims, similarity of participants, but I'd still like you to uphold it. Sure. So as all of the case law says, we have to look at it very fact-specifically. And when we look at these facts specifically, they might not be the same, but they're also not similar. How are they unsimilar if the assertion is, in every instance, Mr. Lamancuzzo, who's alleged to say, in effect, this is how we do things. We brought you in. We can fabricate criminal charges against you by planting drugs. We can fabricate criminal charges against you. We can hold something over you, whether it's criminal charges or whether it's withholding your child from you. We can find a pressure point, and we can extort what we want out of you. They all seem to be aimed at saying, these are extortioners. They use extortionist methods to extract what they want. Why isn't that enough under the very broad statement? Sure. So if we're looking at that allegation that Mr. Lindsay pointed out, that deals with Anna Russo's son, Loupchak. The participants were not involved as in the same. They don't have to be. That's just one point. They don't have to be the same participants. We have a different victim in that case as well, a totally different victim. We have somebody's son as opposed to a criminal defendant. We have a seizure of property instead of any other kind of criminal activity. Let me try it this way. You know the Banks case because that one was cited and dealt with, both of them. This is from Banks. The alleged victims in this case were, quote, similar, unquote, in the sense that they all were engaged in business dealings with the Coens through the FFIC and FFG. In other words, we said you had similar victims because they were all doing business with this entity. Here, that was enough to be similar. Here, you've got similar victims in the sense that they all came under the power of Mr. Lamincuso, according to the complaint. You had, quote, similar participants does not require that the bad guy in Banks have participated in other schemes. It was enough if there was one common enterprise, the DA's office, and it didn't require the same players in every one of them. That's Banks, again, very broadly. I think Banks goes farther and says that beyond the same people, they focus on the nature of the criminal activity alleged. I think that's the focus of their case. And they said in Banks, all of the predicate acts are an alleged breach of fiduciary duty or security fraud. We don't have that same type of criminal activity alleged here or similar criminal activity alleged here. I think the real tension in the case is kind of how high the bar is for relatedness. If it's a really high bar, then we can sit there and say asking sexual favors is different than getting used cars and a coat of paint on a car. You could say they just don't have the same thing to do with each other. And the question seems to be answered, though, at least by our case law, that RICO has all sorts of predicate acts. It allows predicate acts related to economic espionage as well as related to unlawful welfare fund payments. In order to get two or more of these, it seems that the Supreme Court in our case law is saying that that bar for relatedness has to be pretty low. And so if it's a high bar, I think you do pretty good. There's high bars in other places for your client that makes RICO cases hard to prove. But everything I'm reading from the case law says that when we read in the relatedness requirement, it's a low bar. It's almost like a wrinkle in the rug. People can still trip over it, but it's not that big. And so why isn't this low bar one that the plaintiffs today walk over and clear and you can bring all the high bars that RICO proposes later at a later day? Well, I think that broad language at the pleading standards stage that you're citing to relates to the pattern, actually. And a pattern requires both relatedness and continuity. That broad language is more appropriately applied to the continuity standard where they talk about... The quotes I just read to you are all about relatedness, not about continuity. Well, in the H.J. case and in the Swiss stock case, the focus is on continuity. Well, I quoted your language from H.J. about relatedness. It deals with both. The language I quoted to you from H.J. is about relatedness. And relatedness is the only thing we're arguing about in this. Right. Right. Okay. Do you have anything else? Okay. Thanks very much. Thank you. We'll hear from your colleague. May it please the court, Your Honor. on behalf of Detective Richard Rihal in this matter. With respect to some of the issues that the court has already brought up, the district court has made it clear that there are no... There's nothing that is the same as it relates to these particular predicate acts. And I would submit that the only similarity that exists, as Judge Jordan indicated or stated, is that this is a standard prosecutorial process in this case in which a district attorney utilizes law enforcement. Mr. Weimar, there is... I mean, the district court... Here's something the district court said which sounds like relatedness. The district court said, while the allegations suggest that all four schemes may have enriched Mr. Lamacuzzo personally and involved alleged instances of police misconduct, that seems to say they all had something in common. Then the court goes on and said they all involved uniquely different purposes for analysis under RICO. Now, let's just take the first part of that and then look at the second. When the district court says the allegations suggest that all four schemes may have enriched Mr. Lamacuzzo personally and involved alleged instances of police misconduct, why isn't that an acknowledgment by the district court to the detriment of the defendants that there is interrelatedness here? There is a relatedness. It's personally enriching at least one person and involves police misconduct and the leveraging and use of this special unit. Well, the allegations set forth in the Second Amendment complaint with respect to Mr. Tory or Giro do not have any... Mr. Lamacuzzo being involved in that scheme as we'll use. He doesn't have to be in the same one. I mean, the Banks case I've quoted to you from is saying you don't have to have the same... That's the whole point of it being an enterprise. It's not an individual. It's an enterprise, and there are different players in enterprise. And as long as the enterprise is operating to accomplish its illegal racketeering ends, you can have different perpetrators in different instances. So let's assume that Mr. Lamacuzzo wasn't specifically called out in that. It's still asserted that he controls the enterprise. So that's part of the overall... If we are taking the complaint in the light most favorable to the plaintiffs, drawing every reasonable inference in their favor as we are required to do under Rule 12b-6. Yes, Your Honor. And with respect to the enterprise, Detective Reihal, first and foremost, is a full-time police officer of the Newcastle Police Department. He is a member of this separate special investigations unit, which is a multi-jurisdictional group of law enforcement agencies that bring their best officers together to prosecute drug offenses. So as I understand Banks, the court states that no defendant can be liable for a civil RICO violation unless he himself participates in two or more predicate offenses sufficient to constitute a pattern. So with respect to my client, the only allegations against him are with respect to Tori Argyro. And I understand what the allegations that are pled in the Second Amendment complaint attached to plaintiff's... I'm sorry. Defendant's motion to dismiss are the documents pertaining to Mr. Argyro's prosecution as it relates to the drugs. The criminal complaint is attached. The crime lab is attached, showing that the drugs were, in fact, controlled substances. So these allegations in the complaint that suggest that Detective Reihal misfabricated evidence is just not true. I have two questions for you about the complaint. So clearly Mr. Reihal is named as a participant in the Argyro matter. His name appears with regard to the Whiting matter, but the complaint only alleges that he drove Whiting to the police station. Is that enough for the second act necessary? I don't believe so, Your Honor. All that it alleges, as Your Honor has indicated, is that there was an incident. Detective Reihal appeared as a backup officer. He transported Mr. Whiting to, I believe, the police station. He asked him why he was being arrested, and that was the extent of his interaction. That in and of itself... I understand part of your argument is that there's only one predicate act alleged for Reihal. But, you know, I have this question that I'd also like Mr. Lindsay to answer when he comes back up for rebuttal, is that I don't see Mr. Reihal in count one of the complaint. So this is two-count complaint. Count two is out. That was in 1983. I see count one. It says, Russo and Argyro versus Joshua Lamacusa in his official and individual capacity, RICO. It's one, two, three, four, five pages, and then it says, we respectfully request judgment against the defendant. I don't see Mr. Reihal's name even as a defendant in that count. The district court treated the count as if it were against Mr. Reihal. What are we to do here? I agree with you, Your Honor. I brought that up in my initial motion to dismiss. Detective Reihal is not actually named in either of the two counts. He was added as an afterthought in a second amended complaint after a motion to dismiss was granted. His only involvement as it relates to this alleged scheme, or whatever it is, I would submit prosecution of separate criminal defendants, is that he was involved in one interaction with one of the individuals in this case, and the evidence will show that he got a successful prosecution based on the evidence and that there's no fabrication of evidence. There's documentation in the record to support that. So I don't even concede that there was one predicate add on behalf of Detective Reihal, and as I indicated to Judge Freeman, I don't believe that his interaction. But if at this stage we draw the reasonable inferences in favor of the plaintiffs, and we know that we have allegations that District Attorney Lamincusi used the Special Investigations Unit as part of his enterprise to commit predicate acts, and we know that Reihal is in the SIU, isn't an inference then that's reasonable at this stage that Reihal has culpability for the predicate acts committed, at least by the SIU? So instead of searching the complaint for Reihal's name, we should search it for his name as well as the Special Investigations Unit or the SIU? Isn't that an inference that he, that your client will put him to the proof a later day, but at this stage isn't that an inference that cuts in the plaintiff's favor? I think it's too broad to include every member of the SIU as part of this alleged conspiracy or scheme. I would turn it around and say just because he's a member doesn't in and of itself make him culpable as a co-conspirator in this case. So what you're saying is it's not reasonable because membership alone is too broad. What we're looking for is specific predicate acts, and the best that they've got is a juror and then driving someone whiting, arresting. Did he participate in the arrest? What are the allegations? Did he participate in the arrest or did he just drive him to the… As he led in the complaint, all he did was drive Mr. Whiting from point A to point B. And again, this is, as you just indicated, Your Honor, this is the best it gets. I mean we're talking about the AOPC did a look into how many criminal prosecutions each county has in 20, over the course of the last 10 years. It's approximately 1,400 cases in Lawrence County every year. So over the course of six years, you're talking about 8,500 cases. They're citing the four instances, all of which there was criminal conduct on behalf of the defendants. I mean that's, this is, to me this is a fishing expedition and I would ask that it end now. Okay. Thank you, Your Honor. Thank you, Mr. Weinberg. Very briefly to address it, Mr. Ryle, I believe, was the titular head of it and I was just trying to find the paragraph that states that in the complaint of the SIU. It's not just that he is a casual member or one of a number of members. And what our position is, is he wasn't just joined because he was a member of the SIU. He participated in activity which we are saying is typical of what the SIU did, namely fabricated evidence, false charges against someone. So that's what we're saying. To me, that supports that he was a participant in the enterprise. But I'm trying to figure out how he can be a defendant in this civil case if count one, the only count at SIU, does not mention his name. And it says Russo and Argero versus Lemicuza. It doesn't say Lemicuza and Ryle. Well, it doesn't mention his name. It doesn't mention his name, but he is mentioned in the complaint. He is mentioned for what he did. The fact that his name is not in that count, I regret, but that's the way it is. I can't say whether that – I don't think that that disqualifies him from being a defendant in the case because his name is not in that count. Okay. Thank you. We thank counsel. Got the matter under advisement.